UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
RICHARD HERNANDEZ, STEVE      :     Case No.: 2:17-cv-06919 (GRB)
HERNANDEZ, AND MARIA KEEGAN,   :
                                        :
                Plaintiffs,    :
                                        :
                v.               :
                                        :
THE MONEY SOURCE INC.,        :
                                        :
                Defendant.    :
-------------------------------------------------------------------x

## DEFENDANT'S OMNIBUS MOTIONS *IN LIMINE NOS. 1-8*

      Defendant The Money Source Inc. ("Defendant" or "TMS") anticipates that Plaintiffs will seek to introduce various hearsay documents and other inadmissible evidence at trial which must be excluded as stated herein.  In addition, Defendant seeks to introduce various documents and other evidence at trial.  Finally, Defendant seek to sequester Plaintiffs at trial.

**1.  In Limine Motion No. 1 - Various email and other Exhibits concerning "leads" and "late disclosures" must be excluded based on best evidence rule, hearsay and relevance**

      In support of their fraudulent inducement claim, Plaintiffs' Exhibit list is replete with multiple inadmissible emails[1] about a lack of "leads" at TMS.  In addition, in support of their CFPA claim, Plaintiffs seeks to offer emails[2] where they raised issues concerning TMS's alleged late disclosures to borrowers.  However, the Court must exclude these emails and other exhibits at trial under the best evidence rule (FRE 1002) as well as based on hearsay and a lack of relevance.

---

[1] These "leads" exhibits that must be excluded are PX11, PX17, PX18, PX19, PX20, PX21, PX22, PX24, PX25, PX26, PX27, PX28, PX29, PX30, PX31, PX32, PX34, PX40, PX45, PX46, PX47, PX48, PX50, PX52, PX53, PX54, PX55, PX59, PX60, PX61, PX64, PX65, PX66, PX67, PX68, PX69, PX70, PX79, PX89, PX90, PX97.

[2] These "late disclosure" exhibits that must be excluded are PX23, PX28, PX33, PX34, PX35, PX36, PX37, PX41, PX42, PX43, PX44, PX49, PX51, PX56, PX57, PX58, PX62, PX63, PX71, PX72, PX73, PX74, PX75, PX76, PX77, PX78, PX80, PX81, PX82, PX83, PX84, PX85, PX86, PX87, PX88.

### i.      Not the Best Evidence

FRE 1002 requires that "[t]o prove the content of a writing..., the original writing is required."  Under what is commonly known as the best evidence rule, when a party attempts to prove the truth of the contents of the writing, it must be done through the best evidence.  See United States v. Bennett, 363 F.3d 947, 953- 54 (9th Cir. 2004) (A witness's description of a GPS monitor display showing the location and movements of a boat violated Rule 1002 because the display was a writing and the testimony was offered to prove the contents, i.e. the location and movements of the boat).  "The best evidence rule provides that the original of a "writing, recording, or photograph" is required to prove the contents thereof. Fed. R. Evid. 1002. A writing or recording includes a "mechanical or electronic recording" or "other form of data compilation." Fed. R. Evid. 1001(1). Moreover, "[i]f data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an original." Fed. R. Evid. 1001(3).

"Where the rule applies, the proponent must produce the original (or a duplicate, see Fed. R. Evid. 1003) or explain its absence. Fed. R. Evid. 1002, 1004. The rule's application turns on "whether contents are sought to be proved." Fed. R. Evid. 1002 Advisory Committee's note.  States v. Bennett.  "[T]he rule does apply when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself -- particularly when the witness was not privy to the events those contents describe. See Fed. R. Evid. 1002 Advisory Committee's note.  Id..  "This is precisely the kind of situation in which the best evidence rule applies." Id.  See, e.g., L.A. News Serv. v. CBS Broad., Inc., 305 F.3d 924, 935 (9th Cir. 2002) ("We think that Fox's report of what he saw on the label . . . was inadmissible under the best evidence rule."), amended by 313 F.3d 1093 (9th Cir. 2002); see also 14 Am. Jur. Proof of Facts 2d 173 § 14 (1977) ("The reported cases show that proponents of computer-produced evidence occasionally founder on the

best evidence rule by presenting oral testimony based on the witness' review of computer printouts without actually introducing the printouts themselves into evidence." (citing State v. Springer, 283 N.C. 627, 197 S.E.2d 530 (N.C. 1973)). Id.

Similar to Bennett, in this case, Plaintiffs are attempting to prove the data contained in TMS's computer system relating to mortgages and loans ("EASY") - including data about leads and disclosures - through emails.  Instead, Plaintiffs can only offer evidence directly from underlying data directly from the EASY system[3] which is the original writing under FRE 1002. For example, PX61 is an email dated October 21, 2016 from Plaintiff Richard Hernandez who states "we don't have any leads available here."  This email is impermissible under the best evidence rule because Plaintiff must offer the actual data, i.e. the best evidence, from the TMS EASY system showing no leads instead of a hearsay statement about the lack of leads[4].  Also, for example, PX35 is an email dated September 19, 2016 from Richard Hernandez relating to late disclosures of loans in EASY.  This is another classic best evidence prohibition as the email seeks to prove that the disclosures were late.  However, these emails are impermissible under the best evidence rule because the EASY system contains all the data as to the timing of the disclosures. Instead, Plaintiffs must produce documentation such as printouts directly from the actual TMS EASY system concerning the amount of leads or the timing of disclosures and not emails about what Plaintiffs say the EASY system was telling them (double hearsay).

In Bennett, the Ninth Circuit found the admissible of such evidence to be reversable error. Id.

---

[3] It should be noted that Defendant produced thousands of pages from the EASY system to Plaintiff in discovery including data on leads and disclosures so this writing cannot be said to be lost under FRE 1004 which would permit the admission of secondary evidence.

[4] In contrast, PX24 (which Defendant is not seeking to exclude under the best evidence rule (only as irrelevant)) contains data directly from the underlying TMS EASY system indicating that Plaintiff had 5 leads for the day and that there were 50 leads currently available.

### ii.     Hearsay

Any emails sent by Plaintiffs to prove the alleged lack of "leads" or "late disclosures" are inadmissible hearsay as they constitute out of court statements offered for the truth of the matter asserted.  FRE Rule 802.  See Reynolds v. Am. Airlines, Inc., 2017 U.S. Dist. LEXIS 198949 at *4 (E.D.N.Y. Dec. 4, 2017) ("Hearsay is not admissible unless' 'a federal statute, [the Federal Rules of Evidence], or other rules prescribed by the Supreme Court' 'provide[] otherwise'") (citing FRE Rule 802); Evans v. Port Authority of N.Y. & N.J., 192 F. Supp. 2d 247, 263 n.121 (S.D.N.Y. 2002) (the burden of establishing admissibility, including the applicability of a hearsay exception, is with the proponent of the evidence).  Instead, Plaintiffs must produce actual evidence of the number of actual leads distributed or the timing of these disclosures gathered in discovery and not emails complaining that the lack of "leads" or "late disclosures".  Simply put, stating something does not mean that what you state is true, you need to prove it.

Also, these emails do not constitute business records.  It is well held that interoffice emails like the present emails do not constitute a business record for purposes of an exception to the hearsay rule contained in FRE Rule 803(6).  See Hampson v. State Farm Mut. Auto Ins. Co., 2015 U.S. Dist. LEXIS 194378 at **22-24 (N.D.N.Y. Oct. 22, 2015) (finding that emails did not fall within business records exception, and stating that "emails must be held to the same standard as other documents under the records of a regularly conducted exception").  See also Weisfelner v. Blavatnick (In re Lyondell Chem. Co.), 2016 Bankr. LEXIS 3768 at **5-6 (Bank. Ct. S.D.N.Y. Oct. 19, 2016) (citations omitted) ("Importantly, Rule 803(6) requires both that the activity recorded in the email be a 'regularly conducted' business activity, *and* that sending the email be a regular part of that activity"); Morisseau v. DLA Piper, 532 F. Supp. 2d 595, 621 n.163 (S.D.N.Y. 2008) ("An e-mail created within a business entity does not, for that reason alone, satisfy the

business records exception of the hearsay rule"); It's My Party, Inc. v. Live Nation, Inc., 2012 U.S. Dist. LEXIS 119625 at *15 (D. Md. Aug. 23, 2012) ("I decline to accept a blanket rule that emails constitute business records; more specificity is required regarding the party's recordkeeping practices to show that a particular email in fact constitutes a reliable business record"); In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, 2012 U.S. Dist. LEXIS 3406 at *10 (E.D. La. Jan. 11, 2012) ("there is no categorical rule that emails originating from or received by employees of a producing defendant are admissible under the business records exception"); United States v. Cone, 714 F.3d 197, 220 (4th Cir. 2013) ("While properly authenticated emails may be admitted under the business records exception, it would be insufficient to survive a hearsay challenge simply to say that since a business keeps and receives emails, then ergo all those emails are business records failing within the ambit of Rule 803(6)(B)"); Brown v. West Corp., 2014 U.S. Dist. LEXIS 62476 at *7 (D. Neb. May 6, 2014) (rejecting argument that emails among defendant's employees "fall under a per se exception to the hearsay rule as business records" and holding that each email instead "must be analyzed to determine whether it meets the elements of the business record exception and whether any additional statements within the emails require a separate exception"); Candy Craft Creations, LLC v. Gartner, 2015 U.S. Dist. LEXIS at *4 (S.D. Ga. Nov. 2, 2015) (quoting T. Harris Young & Assoc.'s, Inc. v. Marquette Elec., Inc., 931 F.2d 816, 828 (11th Cir. 1991) ("For the business records exception to apply, 'all person involved in the process must be acting in the regular course of business- otherwise, an essential link in the trustworthiness chain is missing'").

As discussed below, Plaintiffs' emails cannot be deemed a business record, as indicated by the extensive case law cited above and the facts. FRE Rule 803(6) requires that Plaintiffs lay a sufficient foundation to establish that for each and every email:

> [T]he email must have been sent or received in the course of a regular business activity, which requires a case-by-case analysis of whether the producing defendant had a policy or imposed a business duty on its employee to report or record the information within the email. [Also], it must be the producing defendant's regular practice to send or receive emails that record the type of event(s) documented in the email. This would require proof of a policy of the producing defendant to use email to make certain types of reports or to send certain sorts of communications; it is not enough to say that as a general business matter, most companies receive and send emails as part of their business model.

Hampson v. State Farm Mut. Auto Ins. Co., 2015 U.S. Dist. LEXIS 194378 at **22-23, citing In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, 2012 U.S. Dist. LEXIS 3406 at **12-16.

Here, Plaintiffs' emails reference not having leads or late disclosures, but are not business records because these emails were not made based on any Company policy or duty.  In order to obtain leads, a loan officer (like Plaintiffs) would go into Defendant's EASY system and pull the leads.  Moreover, based on the EASY system, Defendant clearly knew the amount of leads that a loan officer was obtaining, so an email from a loan officer about the amount of leads would have been superfluous.  Defendant has no policy about loan officers sending internal emails about a lack of leads and/or asking for more leads.  As such, Plaintiffs' emails about not having leads are self-serving, inherently unreliable and clearly were not sent in the course of a regular business activity.

Regarding Plaintiffs' emails on late disclosures, the process is that loan officers (like Plaintiffs) would reach out to a potential borrower to see if they wanted to refinance.  If the borrower was interested, then loan officers would obtain a borrower's authorization form to proceed with the loan.  Once the form was entered into the EASY system, the Processing Department would issue an application for the borrower to fill out and sign, and also send to the borrower the initial disclosures.  Here, Plaintiffs complain that the Processing Department was late in issuing the initial disclosures to customers.  However, Defendant has no policy to establish that

loan officers (like Plaintiffs) had a duty to send supervisors (who did not even work in the Processing Department) an internal email about what they perceived to be a late disclosure.[5]  In fact, the Processing Department knows when and which customers/borrowers were sent or not sent initial disclosures.  As such, Plaintiffs' emails about late disclosures are also self-serving, inherently unreliable and clearly were not sent in the course of a regular business activity.  By contrast, emails or other correspondence sent to borrowers would be business records because the company needs to maintain documentation of when it sent authorization, application and initial disclosures.

Plaintiffs' self-serving emails form the bulk of their exhibits, and are clearly being used as the crux of Plaintiffs' claims to actually prove the lack of leads and the late disclosures.  Defendant would be severely prejudiced if such hearsay evidence were permitted, and may likely constitute reversible error.  See United States v. Ocampo, 650 F.3d 421, 428-430 (2d Cir. 1981) (reversing lower court's admission of hearsay testimony, and holding that such admission of hearsay testimony was not harmless error).

Finally, the Court must also exclude from trial as hearsay the following emails: (1) PX11, which are emails that are hearsay statements from "Jackie" and purportedly from Maria Keegan; and (2) PX66, PX67 and PX89 which are all self-serving hearsay emails from one Plaintiff to another Plaintiff.  See Fed. R. Evid. 802; SEC v. World Info. Tech., Inc., 250 F.R.D. at 152.

### iii.    Irrelevant

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would

---

[5] Instead, Plaintiffs sent these emails about the late disclosures because Plaintiffs simply wanted to get their commissions paid as quickly as possible.

be without the evidence." F.R.E. 401. The determination of relevance is entrusted to the sound discretion of the trial judge. United States v. Schultz, 333 F.3d 393, 416 (2d Cir. 2003). "Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R. Evid. 802. See SEC v. World Info. Tech., Inc., 250 F.R.D. 149, 152 (S.D.N.Y. 2008) (granting motion in limine and excluding emails as either hearsay or not relevant).

Any emails or other evidence proffered by Plaintiffs about the lack of "leads" is irrelevant, as the Complaint does not allege that TMS ever made any representations about the quality or quantity of "leads". Instead, paragraph 23 of the Complaint alleges that Defendant represented that its loan portfolio: (1) had almost $3 billion, (2) had all loans with rates over 4%, (3) had loans all in excess of $250,000 and (4) were held by current clients under FHA or VA loans. There is absolutely no allegation about "leads". Further, paragraph 30 of the Complaint similarly alleges similar representations as in Paragraph 23, but again nothing about leads. Third, paragraph 35 of the Complaint alleges that Defendant's Chief Revenue Officer Mike Mirshazadeh sent two spreadsheets to Plaintiff Richard Hernandez and his team to provide the overall loan production that was being originated from the retention division in the prior two months - again, there is no mention here about "leads". Accordingly, since there are no allegations that TMS ever made any representations about either the quality or quantity of leads to Plaintiffs, these "leads" emails are irrelevant and must be excluded.

In addition, any statements made by TMS after Plaintiffs started working could have not induced Plaintiffs to join TMS as they were already working which makes many of these emails irrelevant to their fraudulent inducement claim.

As such, the Court must exclude as irrelevant and hearsay all of Plaintiffs' emails referenced above that were sent or received after Plaintiffs' start of employment with Defendant wherein Plaintiffs complained about "leads" from Defendant.

**2.   In Limine Motion No. 2 – The Termination Tape must be excluded as illegally recorded evidence and hearsay**

The Court must exclude the tape recording of Plaintiffs' termination, PX100, as it was illegally recorded and also contains many hearsay statements from Plaintiffs.

Here, Plaintiff, Steve Hernandez secretly recorded the telephone conversation with his supervisor Jedd Lara when Lara terminated Plaintiffs from his office in Santa Ana, California during a telephone call on November 4, 2016.  See attached hereto as Exhibit "A" - Lara Dep. pp. 92-93.  However, it is unlawful to tape a telephone conversation with someone in the state of California without their consent and such recordings are inadmissible under California's Invasion of Privacy Act ("CIPA").  Penal Code §§ 630, *et seq.*  In fact, Plaintiffs' conduct was criminal.  Id.

The California Legislature declared that with the advent of new devices and technology used "for the purposes of eavesdropping upon private communications," the resulting invasion of privacy from the "use of such devices and techniques has created a serious threat to the free exercise of personal liabilities and cannot be tolerated in a free and civilized society."  Id.  Various sections of the CIPA make it illegal, for example, to wiretap (§631), to eavesdrop (monitor) and record telephonic communications (§632) or to record without consent cell phone communications (§632.7).

A conversation is deemed "confidential" under § 632 of CIPA if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded.  Flanagan v. Flanagan, (2002) 27 Cal.4th 766, 768, 774–776; Vera v. O'Keefe, 791 F.Supp.2d 959, 966 (S.D. Cal. 2011).  Where the facts are undisputed, the court may

decide the issue as a matter of law. See Weiner v. ARS Services, Inc., 2012 WL 3632025 (S.D. Cal. 2012). Evidence of confidential conversations obtained by eavesdropping or recording in violation of CIPA section 632 is inadmissible in any proceeding. See Frio v. Superior Court, (1988) 203 Cal.App.3d 1480, 1497 ("Section 632, subdivision (d), renders inadmissible all "evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section."

Here, there is no dispute that Plaintiff Steve Hernandez never informed Lara that he was taping the conversation. See PX100. Rather, he only believed that individuals in the room should have known that he was recording the telephone conversation because he had the cell phone on the table. See S. Hernandez Deposition pp. 187-189 as Exhibit B. This is insufficient as a matter of law to establish Lara's consent under CIPA since Lara could not see the cell phone on the table during his telephone call with Plaintiffs in New York from his office in Santa Ana, California.

It should be noted that the fact that Plaintiffs were in New York (one-party consent state) during the call with Lara who was in California (two-party consent state) does not protect Plaintiffs. CIPA applies to calls to or from outside of California based on California's governmental interest in protecting its citizens. Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 120, 137 P.3d 914, 931, 45 Cal. Rptr. 3d 730, 750, 2006 Cal. LEXIS 8362, *53 (Sup. Ct. Cal. July 13, 2006).

Moreover, "New York uses an 'interest analysis' approach to choice of law, which seeks 'to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'" Golden Archer Invs., LLC v. Skynet Fin. Sys., 908 F. Supp. 2d 526 (S.D.N.Y. 2012), citing Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 158 (2d Cir. 2012). In

Golden Archer Invs., LLC, a case with very similar facts, the plaintiff was in New York and recorded telephone conversations with defendant in Illinois, without defendant's knowledge. Like CIPA, Illinois's eavesdropping statute prohibits the recording of conversations without the consent of all parties, and Defendant accordingly asserted a counterclaim based on the Illinois eavesdropping statute. The court held that Illinois law governed the counterclaim:

> First, [plaintiff] recorded the calls with [defendant] knowing that [defendant] was physically present in Illinois…In this regard, [plaintiff] knowingly reached into Illinois and committed a tort against an individual and corporate entity in Illinois…Second, the injury caused by the recordings was inflicted in Illinois, where Defendant is located…the Court is persuaded that, as compared to New York, Illinois has the greater "interest in regulating behaviors within its borders".

Golden Archer Invs., LLC, 908 F. Supp. 2d at 539 (citations omitted). See also Anderson v. Hale, 202 F.R.D. 548, 558-59 (N.D. Ill. 2001) (finding individual in New York liable for violating Illinois eavesdropping statute when defendants' counsel in New York recorded witnesses present in Illinois without the consent of all parties).

Similarly, in the instant matter, California has the greater interest in regulating within its borders the behavior committed in violation of California law, regardless of where the illegal recording occurred. Here, Plaintiffs recorded the call with Defendant, knowing that Defendant was physically present in California. Moreover, in doing so, Plaintiffs knowingly reached into California and recorded a call without Defendant's knowledge, in violation of CIPA. As such, the Court must exclude the tape recording of Plaintiffs' termination.

Lastly, any statements made by Plaintiffs during this call constitute inadmissible hearsay as well and must be precluded under this separate and distinct ground. See Fed. R. Evid. 802; SEC v. World Info. Tech., Inc., 250 F.R.D. at 152.

**3. In Limine Motion No. 3- Backpay after January 3, 2019 must be excluded as irrelevant**

The Court must exclude from trial as irrelevant any backpay claim by Plaintiffs after January 3, 2019. <u>See</u> Fed. R. Evid. 401.  It should be noted that Defendant sold its Origination Division (which included Plaintiffs' subdivision) to AmeriSave Mortgage on or about January 3, 2019 which will affect any award for back/ front pay.  <u>See</u> Exhibit C, attached hereto.  Further, although AmeriSave did assume Defendant's Texas and Arizona offices, as well as a number of its employees working from those locations at the time of sale, all other employees in that Division were laid off at the time of the sale – including any from that division, working within its New York location.

As such, Plaintiffs' employment would have terminated as of January 7, 2019 and the back pay period ended on that date, assuming arguendo they could prevail on their claims.  <u>See</u>, <u>e.g.</u>, <u>Tyler v. Union Oil Co.</u>, 304 F.3d 379, 401-02 (5th Cir. 2002) (upholding district court's determination that "should only be awarded through the May 25, 2000 cessation of [the employer's] operation"); <u>EEOC v. Recession Proof United States LLC</u>, 2013 U.S. Dist. LEXIS 171524, at *46 (D. Ariz. Aug. 19, 2013) ("[W]hen a defendant employer's business is sold, closed or terminated, the period of back pay ends at the time the business ceased to operate."); <u>Rhoads</u>, 956 F. Supp. at 1260-61 ("Certainly, if the plaintiff's job ceases to exist so [*12]  must any back pay liability."); <u>Helbling v. Unclaimed Salvage & Freight Co.</u>, 489 F. Supp. 956, 963 (E.D. Pa. 1980) (holding that back pay award was appropriate only for period from termination to the closing of the store where plaintiff worked, i.e. "the period it can be assumed she would have held the job to which she was entitled"); <u>Bhaya v. Westinghouse Elec. Corp.</u>, 709 F. Supp. 600, 605 (E.D. Pa. 1989) <u>aff'd</u>, 922 F.2d 184 (3d Cir. 1990) ("if plaintiffs would have been laid off for permissible reasons sometime [point after their termination], then plaintiffs' damages should have been limited

accordingly. Any subsequent loss of pay simply was not caused by defendant's discrimination"); <u>U.S. Dep't of Labor v. Copart, Inc.</u>, 431 F. Appx. 758, 761 (10th Cir. 2011) (emphasis in original) ("it was proper for the court to consider the date [the defendant employer] ceased trucking operations [] when calculating back pay. . . . It would be nonsensical, as the district court noted, to place [the plaintiff] in a <u>better</u> position than all other drivers [the defendant] had employed"); <u>Grame v. Osborn Transp.</u>, 2001 U.S. Dist. LEXIS 10582, 2001 WL 951357, at *2 (D. Kan. July 19, 2001) ("where an employer goes out of business and terminates all employees, plaintiff's eligibility for back pay ceases").

In fact, courts have held that the sale of a division of a business will cut off back pay since the same rationale applies, i.e. the employee would have been laid off for a legitimate non-discriminatory/non-retaliatory reason.  <u>Bonura v. Chase Manhattan Bank, N.A.</u>, 629 F. Supp. 353, 356 (S.D.N.Y. 1986) (lost wages may be limited "to exclude the period after which the division in which the prevailing plaintiff worked was entirely eliminated); <u>Hill v. Spiegel, Inc.</u>, 708 F.2d 233, 238 (6th Cir. 1983) (concluding "loss of salary" damages should end on the date that defendant employer eliminated the entire division in which plaintiff had been employed).  As succinctly stated in <u>Miano v. AC & R Advertising</u>, 875 F. Supp. 204, 222, 1995 U.S. Dist. LEXIS 680, *55-56, 66 (SDNY 1995):

> Moreover, expansions and contractions are common to many companies and would have occurred at AC&R even if plaintiffs had not been terminated. <u>Ford Motor Company</u> plainly rejects the notion that plaintiffs are entitled to be placed in a better position than they would have been in the absence of discrimination." <u>citing</u> 458 U.S. at 234 (citing <u>Albemarle Paper Co. v. Moody</u>, 422 U.S.405, 418-22, 45 L. Ed. 2d 280, 95 S. Ct. 2362 (1975)(purpose of Title VII is to make persons whole for injuries suffered due to unlawful discrimination). Indeed, had AC&R gone out of business, plaintiffs' eligibility for back pay might have ended upon the sale. See, <u>e,g, EEOC v. Monarch Machine Tool Co.,</u> 737 F.2d 1444, 1453 (6th Cir. 1980)(where employer sells business and terminates all employees, plaintiff's right to back pay ends upon the date of sale).

Accordingly, since Plaintiffs' back pay claims must terminate in January 2019 due to the sale of Defendant's Loan Origination Division when Plaintiffs would have been laid off, any evidence concerning earnings after that date are per se irrelevant.

**4. In Limine Motion No. 4- Plaintiffs' use of word "whistleblower", "victim" or "victimized" must be excluded**

It is anticipated that Plaintiffs' counsel will seek at trial to refer to some or all of the Plaintiffs as a "whistleblower", or as a "victim" or "victimized", or otherwise attempt to admit evidence making references to these words. However, as stated below, this is a charged word which must be completely excluded from use at trial.

Courts have specifically precluded similar comments of a inflammatory nature from being made at trial. Nor may an attorney make prejudicial or inflammatory remarks. See Berkowitz v. Marriott Corp., 163 A.D.2d 52, 558 N.Y.S.2d 511 (1st Dept. 1990) (reversal mandated where plaintiff's counsel made numerous prejudicial comments during his summation, including attacking the credibility of the defendant's experts and attorneys and referring to the experts as "hired guns" who were brought into litigation to "fluff up the case" and stating that defense counsel was merely carrying out "instructions from his principals, and possibly he doesn't even believe himself some of the things he has said"); see also Tehozol v. Anand Realty Corp.,41 A.D.3d 151, 838 N.Y.S.2d 32 (1st Dept. 2007) (prejudicial remarks including appealing to jurors' class, prejudice, or passion were sufficiently prejudicial as to create likelihood that counsel's misconduct improperly influenced verdict); Johnson v. Lazarowitz, 4 A.D.3d 334, 771 N.Y.S.2d 534 (2d Dept. 2004) (reversal mandated where the record was "replete with vituperative remarks made by plaintiff's attorney for the sole purpose of inducing the jury to decide this case on passion rather than on the basis of the evidence").

Therefore, Defendant respectfully requests that Plaintiffs' counsel not be permitted to refer to some or all of the Plaintiffs as a "whistleblower", or as a "victim" or "victimized", or otherwise attempt to admit evidence making references to these words, as clearly such remarks are only courtroom.  See Berkowitz v. Marriott Corp.,163 A.D.2d 52, 558 N.Y.S.2d 511.

**5.  In Limine Motion No. 5- Incomplete exhibits must be excluded as contravening FRE Rule 106**

The Court must exclude any exhibits by Plaintiffs that are incomplete.  See Exhibit PX4, p. 2-5, and which lacks page 1; PX57, p. 1- top, which refers to an email that has not been produced. See also PX35, which is incomprehensible based on cut off lines in the email chain.

Federal Rule of Evidence 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Rule 106 requires that "a full document…be admitted when it is essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact."  Phoenix Assocs. III v. Stone, 60 F.3d 95, 102 (2d Cir. 1995) (internal quotation marks and citations omitted).

Notwithstanding the Court's order dated December 21, 2021 precluding Defendant from objecting to incomplete documents, the Second Circuit has found the admission of incomplete documents in contravention of FRE 106 was not "harmless error" by the trial court and ordered a new trial.  See Phoenix Assocs.  III v. Stone, 60 F3d. 95 (1995).  As such, Plaintiffs' incomplete exhibits must be excluded from admission at trial.

**6.  In Limine Motion No. 6- Deposition testimony of Jedd Lara and Trent Ford must be excluded as both will be present at trial**

The Court must exclude Plaintiffs from offering evidence from the deposition transcripts of Jedd Lara and Trent Ford, as both individuals will be physically present at the trial.  See Exhibit D, attached hereto (trial subpoenas to Jedd Lara and Trent Ford).

Courts have a preference for live testimony.  BlackRock, Inc. v. Schroders PLC, 2007 U.S. Dist. LEXIS 39279, at *27 (S.D.N.Y. May 30, 2007) (noting that although the matter could be tried without live testimony from unwilling witnesses, "so proceeding would be contrary to the policy of this Circuit") (citing DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 30 (2d Cir. 2002)). The Federal Rules of Evidence permit use of deposition testimony where a witness is unavailable for trial.  Fed. R. Evid. 804(b).  However, "parties who have been served properly under Rule 45 cannot demand that their depositions be used in lieu of live trial testimony." Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., 262 F.R.D. 293, 301 (S.D.N.Y. 2009). See also Distefano v. Carozzi N. Am., 2002 U.S. Dist. LEXIS 23042, at *5 (E.D.N.Y. Nov. 27, 2002) (noting that a case may be tried on depositions where trial is fixed "'at a point where litigants cannot compel personal attendance'") (citing Gulf Oil v. Gilbert, 330 U.S. 501, 511, 67 S. Ct. 839, 844, 91 L. Ed. 1055, 1064 (1947)).

In this matter, while Plaintiffs intend to offer evidence from the deposition transcripts of Jedd Lara and Trent Ford, Defendants have subpoenaed both of these individuals to testify at trial. As such, both Mr. Lara and Mr. Ford will not be "unavailable for trial", and not subject to the exception contained in Fed. R. Evid. 804(b), which precludes Plaintiffs from offering the deposition transcripts at trial.

**7.  In Limine Motion No. 7- Admissibility of mortgage and interest rates based on judicial notice**

Defendant anticipates offering Fannie Mae/Freddie Mac mortgage rates and the Federal Reserve interest rates into evidence. The Court should take judicial notices of these rates and admit all such evidence at trial.

A court may take judicial notice of a fact under Federal Rule of Evidence 201 if it "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  See Doyle v. U.S. Dep't of Homeland Sec., 331 F. Supp. 3d 27, 42 (S.D.N.Y. 2018), aff'd, 959 F.3d 72 (2d Cir. 2020).  Courts routinely take judicial notice of governmental records retrieved from official government websites. See Wells Fargo Bank, NA. v. Wrights Mill Holdings, LLC, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (collecting cases).

In this matter, the Fannie Mae/Freddie Mac mortgage rates and the Federal Reserve interest rates are all governmental records retrieved from official government websites.  As such, the Court should take judicial notice of these rates and admit them into evidence at trial.  See, e.g. Exhibit E (samples of Freddie Mac rates), attached hereto.

**8.  In Limine Motion No. 8- Plaintiffs must be sequestered based on FRE Rule 615**

Defendant respectfully submits that Plaintiffs should be sequestered from each other's testimony during trial.  See Fed. R. Evid. 615, which allows parties to request that a witness be sequestered from court proceedings.  Although Fed. R. Evid. 615 has several exceptions to sequestration, it "carries a strong presumption in favor of sequestration."  See United States v. Jackson, 60 F.3d 128, 135 (2d Cir. 1995).

Nevertheless, it explicitly states that it "does not authorize excluding a party who is a natural person." Fed. R. Evid. 615(a).   This provision leaves little judicial discretion in applying Fed. R. Evid. 615(a).   Fed. R. Evid. 615(c), however, does allow judicial discretion in determining whether an exclusion to the sequestration rule applies.   That provision says, at a party's request, the court must order sequestration unless the person at issue is someone "whose presence a party shows to be essential to presenting the party's claim or defense."    The Third Circuit, in Government of Virgin Islands v. Edinborough, recognized this provision as giving judges more discretion in administering sequestration requests, saying Fed. R. Evid. 615(c):

> has not entirely eliminated all judicial discretion, but rather has changed the burden of proof.  While the party desiring sequestration previously had to convince the court to grant it, under [FRE 615(c)] sequestration must be given unless the party opposing the exclusion has convinced the court to exercise its discretion to except a particular witness from the sequestration order on the basis of his or her necessity to the presentation of the party's cause.

See 625 F.2d 472, 474-75 (3d Cir. 1980) (citing Cooper v. United States, 594 F.2d 12, 14 (4th Cir. 1979); and 3 WEINSTEIN & BERGER, EVIDENCE 615(01) at 615-8.   The Third Circuit's analysis means that someone who is not technically a party to the case may presumptively be sequestered unless the party opposing sequestration can demonstrate that person's essential role in presenting their case.   The advisory notes to Fed. R. Evid. 615 suggest that the contemplated person that would be so indispensable to a party would be a government agent testifying about an investigation or an expert witness.   See Fed. R. Evid. 615 advisory notes; see also Malek v. Federal Ins. Co., 994 F.2d 49, 54 (2d Cir. 1993).

For the purposes of this hearing, Plaintiffs do not fit into the FED. R. EVID. 615(a) category.   While some common allegations may make some or all of the Plaintiffs co-parties, it is incorrect to consider the Plaintiffs "co-parties" at this trial because each Plaintiff's claims are

separate claims with unique circumstances surrounding their termination by Defendant.  Moreover, since the circumstances are so particularized, none of Plaintiffs would be prejudiced by a sequester.  In fact, each Plaintiff essentially has their own case against Defendant, based on their own particularized fact pattern, and therefore the Court should view each Plaintiff as a non-party for the testimony of another Plaintiff.

Plaintiffs also do not fit into the Fed. R. Evid. 615(c) category.  As described in Government of Virgin Islands v. Edinborough, Plaintiffs would bear the burden of proving that they are each indispensable for the presentation of the case.  That burden would not likely be met because Rule 615(c), as stated in the advisory notes, contemplates someone like an expert witness, not just another fact witness whose testimony could be easily swayed.  Moreover, it is impossible for Plaintiffs to be indispensable to each other's testimony because the circumstances surrounding each Plaintiff's termination are unique to each Plaintiff.

Finally, the policy underlying Fed. R. Evid. 615 strongly favors sequestration in this instance.  In this case, Plaintiffs have an incentive to collude with each other to provide a false, albeit cohesive and coherent, recounting of facts to maximize their chances of winning.

The prevention of such circumstances is precisely why the sequestration rule exists.  Therefore, Plaintiffs should be sequestered during the testimony of the other Plaintiffs.

Dated: Lake Success, New York
        December 28, 2021

                              Respectfully submitted,

                              **MILMAN LABUDA LAW GROUP PLLC**

                              __/s Joseph M. Labuda, Esq._____
                              Joseph M. Labuda, Esq.
                              Michael J. Mauro, Esq.
                              3000 Marcus Avenue, Suite 3W8
                              Lake Success, NY 11042-1073
                              (516) 328-8899 (office)

(516) 328-0082 (facsimile)
joe@mllaborlaw.com
michael@mllaborlaw.com

*Attorneys for Defendants*