**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
RICHARD HERNANDEZ, STEVE
HERNANDEZ and MARIA KEEGAN,

                Plaintiffs,

        -against-

THE MONEY SOURCE INC.,

                Defendant
----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**

17-cv-6919 (GRB)(AYS)

FILED
CLERK

4:41 pm, Jul 12, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**GARY R. BROWN, United States District Judge**:

> *"To allow this conduct to continue without repercussions and sanctions is to condone the very conduct. Enough is enough."*
>     *-Joseph M. Labuda, Esq. in a letter to this Court in Piccolo et al. v. Top Shelf Provisions Co. Inc., 16-CV-6930 (GRB), DE 96*

In this action, which is scheduled for trial in a matter of days, the Court twice deemed a set of *in limine* motions filed by defendant as improper and ordered those motions withdrawn, advising counsel that these mainly ill-considered motions should only be refiled after further review and discussion, and that sanctions would be imposed without hesitation if legally unsound or otherwise improper applications were again refiled. Less than twenty-four hours later, defendant's counsel, quoted above, refiled all but one of these motions for a third time. For the reasons set forth below, the Court DENIES motions *in limine* Nos. 1 through 9, GRANTS IN PART motion *in limine* No. 10 and directs Mr. Labuda to SHOW CAUSE why sanctions should not be imposed against him under 28 U.S.C. § 1927.

    **BACKGROUND**

The factual background of this case and the underlying claims and defenses are fully discussed in the summary judgment decision by the late Magistrate Judge A. Kathleen Tomlinson,

1

which was adopted by the undersigned and is incorporated by reference herein.  DE 61.  Following that decision, at a pretrial conference, the Court set January 11, 2022 as a firm date to begin jury selection so that this matter, which has dragged on for some time, could be tried.  DE 73.  In October 2021, counsel for defendant moved to adjourn that trial for six months on the grounds that one associate in the case would be out on maternity leave, which application was opposed by plaintiffs.  *Id.*; DE 75.  In light of the large number of attorneys working on this case, the Court denied that application.  Electronic Order dated October 27, 2021.

Mr. Labuda entered the case soon thereafter, and applied, once again, to delay the trial.  DE 78, 79.  Remarkably, Mr. Labuda's request for reconsideration represented that "Desiree Gargano, although at Certilman Balin . . . ha[s] not participated in this matter."  DE 79 at 2.  This proved curious, as defendant's earlier application to delay trial was predicated entirely upon Gargano's upcoming maternity leave, noting "Desiree is an integral part of our defense team and it would be challenging at best for the Defendant to have to put on its defense without her."  DE 73 at 1.  As such, and based upon the failure to otherwise demonstrate good cause, the Court again rejected the application.  Electronic Order dated November 17, 2021.

*Motions in Limine 1-9*

In June 2021, defendant's prior counsel filed a single motion *in limine*, challenging the admissibility of plaintiffs' expert testimony.  DE 65.  As further justification for his November 2021 motion for reconsideration seeking a later trial date, Mr. Labuda identified the need to develop further "motions in limine," and describing a raft of potential additional issues to be resolved before trial.  DE 79 at 2-3.  Thereafter, Mr. Labuda filed, on December 28, 2021, a total of eight motions *in limine*, discussed further below.  DE 103.  Though trial was then unavoidably delayed due to a COVID surge, on January 12, 2022, Mr. Labuda filed a ninth such motion, DE

116, and in June 2022, added a tenth motion *in limine* to preclude expert testimony. DE 128.

On June 17, the Court entered the following order:

> Whereas there appear to be at least ten pending motions in limine, the pending motions are deemed WITHDRAWN. As stated in the undersigned's Individual Rules, "[c]onsistent with Rule 37.3 of the Local Rules, prior to seeking a pretrial conference or filing any non-dispositive pre-trial motions, the parties are to meet and confer in an effort to reach agreement with respect to these submissions or narrow the scope of the request." *See* Rule III.c. *See also Fields v. Bayerische Motoren Werke Aktiengesellschaft,* No. 18-CV-2889(GRB)(AYS), 2022 WL 905129, (E.D.N.Y. Mar. 28, 2022) (denying pending motions in limine and ordering the parties to meet and confer in a good faith attempt to resolve their differences before filing unresolved in limine motions with the Court).

Electronic Order dated June 17, 2022. Undeterred, one week later, Mr. Labuda moved to reinstate all previously filed motions. DE 133. Plaintiffs had but one such motion pending.

In turn, the Court entered a second order providing as follows:

> About two weeks ago, this Court withdrew approximately ten motions in limine, mostly by defendant, to allow counsel the opportunity to reconsider the filings, meet and confer and limit the motions only to those which reasonably require the Court's intervention and are presumably made in good faith. Astonishingly, by letter dated 6/27/22, Mr. Labuda seeks to restore ALL of these motions to the calendar, claiming, without explanation, that the parties "have not been able to agree to narrow the scope of the myriad issues raised in the parties' respective motions." This conclusory statement encompasses, for example, defendant's motion in limine number eight, which requests that -- contrary to express statutory command -- this Court exclude the plaintiffs from attending portions of the trial. Suffice it to say that the motion to renew those motions is denied, but perhaps further explication is required, as counsel doesn't seem to have heard the Court's message. Irrespective of the meet and confer requirement, each counsel should reconsider each motion before refiling, AS THE COURT WILL NOT HESITATE TO IMPOSE SANCTIONS FOR MOTIONS FILED UNREASONABLY OR OTHERWISE IN BAD FAITH.[1]

Electronic Order dated 6/30/2022.

---

[1] Since the dawn of the Internet age, language set in capitals had generally reflected one of two scenarios: either (1) the writer had inadvertently depressed the "CAPS LOCK" key or (2) to reflect emphasis and avoid misunderstanding, as computer platforms (such as the Court's ECF system) often fail to consistently recognize bold or underlined text. Obviously, the use of all caps to warn counsel of the possible imposition of sanctions fell squarely into the latter category.

Astonishingly, still seemingly oblivious, within 24 hours of the entry of the above order, Mr. Labuda again moved to restore all of these motions to the calendar, with the sole exception of motion number eight which the Court had already identified – as an example – as a motion plainly contrary to law.  DE 138.  He further took the liberty of refiling these motions, without even taking the time to excise the patently spurious motion number 8.  DE 139-141.  Plaintiffs, by contrast, managed to resolve their sole *in limine* motion without the need for Court intervention.  DE 138.

*Background Related to Defendant's Tenth Motion in Limine*[2]

To establish damages, plaintiffs retained the service of Dr. Stephen Shapiro, proffered as an economics expert.  In 2019, Dr. Shapiro issued an expert report.  DE 65-3.  In November 2019, Dr. Shapiro updated his report because of a calculation error in the "age related earnings growth and growth in the United States Consumer Price Index."  He did not "ma[k]e any changes to the methodology and analytics approach used to calculate damages."  DE 65-8.

Two years later, on December 6, 2021, plaintiffs' counsel requested leave to amend the Joint Pre-Trial Order ("JPTO") to add the "updated" expert report of Dr. Shapiro which they had received three days prior.  DE 85.  According to counsel, "Plaintiffs' expert economist wrote his initial report in July 2019 and he wanted the opportunity to revisit his report since it has been about 2.5 years since he completed it."  *Id.*  At the time, trial was slated to begin in just a little over 30 days, with jury selection scheduled for January 11, 2022.  Electronic Order dated October 13, 2021.

The Court granted the motion to amend the JPTO with Dr. Shapiro's updated report.  Electronic Order dated December 9, 2021.  The following day, defense counsel requested leave to:

---

[2] Of course, when counsel unleashes a barrage of spurious motions, as has clearly happened here, it creates a risk that a legitimate motion can get lost.  However, to ensure that the parties are treated fairly, the Court has been careful to separate the proverbial baby from its bathwater.

4

(1) supplement its expert report, and (2) again depose plaintiffs and their expert regarding earnings and efforts to mitigate. DE 88. The Court denied counsel's request to amend the JPTO and re-depose plaintiffs but allowed defendant to "supplement its expert report to the extent that such supplementation is directly responsive to Plaintiffs' amendments to their expert report, as referenced in Plaintiffs' December 6, 2021 letter." Electronic Order dated December 14, 2021.

On December 16, 2021, defense counsel asked the Court to compel the deposition of plaintiffs' expert because of an "eleventh-hour change" in his report. DE 94. As counsel explained, "the report does not merely 'update' the expert's prior opinion to account for the elapse of time since his corrected October 2019 report. Rather, the report conjures up a wholly new basis for the expert's new numbers and abandons the prior basis." *Id.* The Court granted defendant's motion, permitting a renewed deposition of the expert. Electronic Order dated December 17, 2021.[3]

Days later, trial was cancelled *sine die* on the advice of the Court epidemiologist in light of the Omicron surge, and in April the trial was rescheduled for July 18, 2022. Electronic Orders dated January 5, 2022 and April 22, 2022. On June 14, 2022, defense counsel filed a motion *in limine* to preclude the expert report and testimony of Dr. Shapiro. DE 128. On June 29, 2022, plaintiffs filed their opposition, with which they submitted Dr. Shapiro's revised December 2021 expert report with this Court. DE 137, 137-4.

On review, it appears that defendant's assessment of plaintiffs' supplemental expert report hit the mark. The original expert report, filed in 2019, calculating the lump sum value of lost compensation based on economic projections. DE 65-13. The 2019 projections were based upon

---

[3] Since the parties disagreed (unsurprisingly) over the length and format of the deposition, DE 97-98, the Court's intervention was necessary to order that "Defendant's deposition of Plaintiffs' expert witness Dr. Shapiro shall be limited to 3.5 hours in length, not limited in scope, and may be conducted virtually." Electronic Order dated January 3, 2022.

5

the "annual average growth in median salaries for male credit counselors and loan officers" published by the Census Bureau. DE 65-13 at 3. Problems emerged, however, seemingly because of the boom in the housing market attendant to the pandemic: plaintiffs' actual salaries dwarfed Shapiro's projections, even exceeding the compensation projections for their original positions for 2019 through 2021. These events would seem to dramatically reduce the damages to which plaintiffs may be entitled if they prevail at trial.

Rather than explain these issues and deal with the consequences, Shapiro changed his methodology, abandoning the Census Bureau's salary data and substituting projections based upon "the year-over year [sic] percent change in the volume of originated residential mortgages," derived from a database maintained by the Federal Housing Finance Agency. DE 145-4, n.4. The altered methodology not only goes unexplained; it takes a great deal of careful reading and comparison of the two reports – including a close examination of the footnotes – to unearth his bases. *Id.* At the supplemental deposition ordered by the Court, Shapiro admitted, among other things, that he had never "used that particular metrics [sic] to project compensation in any case other than this case." Tr. at 14, DE 145-3.

The results are simply staggering. Even though plaintiffs earned far more in reality than in the expert's earlier projections (and, indeed, earned more than they "would" have earned at their prior employment inside this theoretical world), the new methodology somehow demonstrates that they are far worse off (and therefore entitled to greater damages). Dr. Shapiro's supplemental report substitutes the actual figures earned by plaintiffs in, for example, 2020 and 2021 at United Mortgage, which proved a multiple of his 2019 projections:[4]

---

[4] This alarming disparity could be seen as undermining the validity of his original projections, but in fairness, it would have been impossible to have foreseen the dramatic impact that the pandemic would have on the housing market.

6

| **Plaintiffs' Actual Earnings at United Mortgage Compared to Shapiro's Original Projections (rounded)** | | | | |
|---|---|---|---|---|
| | 2019 Report (Projected Wages) | | 2021 Report (Actual Wages) | |
| | 2020 | 2021 | 2020 | 2021 |
| Steven Hernandez | $102,000 | $103,000 | $263,000 | $175,000 |
| Richard Hernandez | $147,000 | $149,000 | $378,000 | $235,000 |

DE 65-13, 145-4. Since they earned far more than projected, the reality of these figures would seem to greatly reduce plaintiffs' projected losses. However, using his new methodology, Shapiro also wildly altered his projections as to the sums plaintiff would have earned had they maintained their original positions at New Penn Financial, their employer prior to working for defendants:[5]

| **Changes to Plaintiffs' Theoretical Earnings at New Penn Based on Shapiro's New Methodology (rounded)** | | | | |
|---|---|---|---|---|
| | 2019 Report | | 2021 Report | |
| | 2020 | 2021 | 2020 | 2021 |
| Steven Hernandez | $151,000 | $153,000 | $241,000 | $250,000 |
| Richard Hernandez | $351,000 | $356,000 | $562,000 | $583,000 |

*Id.* The net changes are truly staggering, as summarized below:

| **Calculated "Lump Sum Equal to All Lost Compensation" as Presented in Dr. Shapiro's Reports (rounded figures)** | | |
|---|---|---|
| | 2019 Report | 2021 Report |
| Steven Hernandez | $1.3 million | $2.2 million |
| Richard Hernandez | $5 million | $9.1 million |
| **Total Projected Losses** | **$6.3 million** | **$11.3 million** |

---

[5] Of course, it is possible that plaintiffs' compensation at New Penn would have increased with the housing boom at New Penn, but one cannot draw any reasonable inferences predicated upon Shapiro's work, which falls clearly into the realm of convenient guesswork and conclusory speculation.

*Id.* Thus, somehow, though they were actually making far more money than originally projected, plaintiffs' losses nearly doubled as a result of Shapiro's new methodology. Something just doesn't add up.

## DISCUSSION

### Defendant's *In Limine* Motions 1-9

That Mr. Labuda filed these motions three times after being cautioned by the Court might give rise to an impression that they were important, well-crafted and thoroughly considered. Unfortunately, with one exception, defendant's *in limine* motions focus on trifling matters; many are simply baseless or directly contrary to earlier rulings by this Court. The motions, and this Court's ruling thereon, are as follows:

*Motion Number 1: Exclusion of Certain Emails*

Defendant seeks to exclude certain emails as "not the best evidence" and based upon hearsay and relevance. The use of the term "best evidence" here represents a complete misapplication of the best evidence rule. *See* Fed. R. Evid. 1002; Fed. R. Evid. 1001(d). Essentially, counsel attempts to bootstrap the best evidence rule onto the instant set of emails as these documents purportedly refer to certain data contained in another computer system. However, the emails themselves constitute originals under Fed. R. Evid. 1001(d), making the objection easily dispatched on that ground.

Defendant also argues that the data referenced in these emails constitute hearsay. However, plaintiffs make clear in their response that these documents will not be offered for the truth asserted, undercutting the applicability of the hearsay rule. *See, e.g.*, *Wright v. Urban Outfitters*, No. 1:06-cv-13389, 2009 WL 10736929, at *4 (S.D.N.Y. Nov. 30, 2009) ("Here, plaintiff is not presenting these emails to establish the truth of their contents, but to establish that the defendant had notice of her complaints. Accordingly, the evidence is not hearsay"). That plaintiffs' more limited offer of these

documents resolves this objection demonstrates the importance of the Court's directive to confer on these matters, and further underscores the failure of defendant's counsel to do so in good faith.

*Motion No. 2: Suppression of Taped Conversation*

Plaintiffs intend to offer an audio recording made by plaintiff Steve Hernandez of a telephone conversation of his termination by defendant's representative Jedd Lara, apparently recorded without Lara's knowledge. According to the facts proffered by defendant, Lara was in California at the time of the termination call, while Hernandez was in New York.[6] DE 139 at 9. California is a "double consent" state, requiring that both parties consent to recording of a telephone conversation. Relying on California criminal and tort law, defendant argues that the Court "must exclude the tape recording." *Id.* at 9-11.

Of course, in a federal court, questions of procedural law are governed by federal law, while, under an *Erie* analysis in diversity cases, substantive law is drawn from the states. Thus, that the instant recording may well excludable under California law is entirely irrelevant to its admissibility in this case. *On Lee v. United States,* 343 U.S. 747, 754–55 (1952) ("violation of state law, even had it been shown here, as it was not, would not render the evidence obtained inadmissible in federal courts"). "Rules of evidence . . . are generally considered procedural in nature." *De Larancuente v. Am. Airlines, Inc.,* No. 18-cv-4939 (NG) (RER), 2022 WL 2239556, at *3 (E.D.N.Y. 2022); *see also United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998) (rejecting claim that surreptitious recording violated California law because "federal law governs the admissibility of evidence in a federal criminal trial"). It is elementary that the Federal Rules of Evidence "apply to proceedings before . . . United States district courts[,]" Fed. R. Evid. 1101, and "questions relating to the admissibility of evidence, whether oral or otherwise, should usually be determined by the local law of the forum." Restatement (Second)

---

[6] The parties dispute whether Hernandez knew that Lara was in California at the time the recording was made, but this fact is irrelevant for the analysis.

9

of Conflict of Laws § 138, cmt. a (Am. L. Inst. 1971). "[U]nder federal law [as well as New York], a telephone conversation may be taped as long as one party to the conversation consents to the taping." *Locke v. Aston*, 31 A.D.3d 33, 35 (1st Dept. 2006).

Thus, defendant's motion No. 2 is baseless.

*Motion No. 3: Wage Claims after January 2019*

Defendant seeks to exclude evidence concerning any wage claims arising after January 3, 2019, the date of plaintiffs' termination and roughly coextensive with a purported spinoff and sale of certain of defendant's operations. Of course, while presented as an evidentiary motion, the true nature of this application is a substantive determination that would have been more properly raised during the summary judgment phase of this case. Putting that issue aside, however, defendant's motion is similarly without basis.

Cobbling together a set of citations from discrimination cases, defendant argues that there can be no liability for back pay following plaintiffs' termination and/or the purported sale of business assets. However, the instant dispute, as Judge Tomlinson found in her Report & Recommendation, is predicated upon fraudulent inducement, and thus the damages extend to "lost professional opportunities, damage [to] their professional reputation . . . diminution of their earnings and earnings potential and damage to their career growth." DE 61 at 19 (quoting DE 1, ¶ 90). Thus, the date of termination and/or sale of business operations do not provide a basis for excluding evidence of damages, and the motion is denied.

*Motion No. 4: "Victim" and "Whistleblower"*

Stringing together a cartload of largely irrelevant and non-binding state court decisions, counsel for defendant moves that plaintiffs' counsel should be barred from using terms such a "victims," "victimized," and "whistleblower" during the trial. DE 139 at 14-15. Recently, in *Fields v. Bayerische Motoren Werke Aktiengesellschaft*, this Court rejected a nearly identical motion *in limine*, holding it up as an example of applications "seek[ing] relief so very inconsequential that their

10

filing only highlights counsels' failure to reasonably engage with each other in anticipation of trial." No. 18-CV-2889 (GRB)(AYS), 2022 WL 905129, at *2 (E.D.N.Y. 2022) (rejecting *in limine* motion seeking to bar the use of the word "victim" by plaintiff). Ironically, the *Fields* case is the very opinion cited in this Court's June 17, 2022 Order withdrawing the *in limine* motions. Apparently, defense counsel opted not to read it.

The motion is denied. *See id.* at *2, n.2 ("Courts have uniformly held that such matters are 'not appropriate to be ruled upon in a Motion in Limine'") (quoting *Gannon v. Menard, Inc.*, 2019 WL 7584294, at *5 (S.D. Ind. 2019) (collecting cases)).

*Motions No. 5 (Excluding Incomplete Exhibits) and 7 (Judicial Notice of Mortgage Rates)*

In motions 5 and 7, defendant asks the Court to exclude certain exhibits which they contend are incomplete, and take judicial notice of Fannie Mae and Freddie Mac mortgage rates. These applications require little discussion as the Court has previously entered orders rejecting both these applications. *See* Electronic Order dated December 21, 2021 ("Defendant is precluded from arguing that the absence of signature pages and other extraneous material should render the exhibits inadmissible") and December 14, 2021 (denying request to supplement record with Fannie Mae/Freddie Mac interest rate reports).

*Motion No. 6: Use of Deposition Transcripts and Motion No. 9: Misnumbered Trial Exhibits*

Defendant argues that plaintiff should be precluded from offering deposition testimony for two of its witnesses who will now, it represents, be available at trial. DE 139 at 16. Plaintiffs' counsel properly notes that "Plaintiffs have a right to use the transcripts as permitted by the federal rules," a proposition that would include permissible uses even assuming these witnesses appear at trial. *Id.*

Motion No. 9 may be defendant's most frivolous application. DE 140. According to Mr. Labuda, plaintiff's counsel provided him with a trial binder in which the exhibits are misnumbered and several exhibits are missing. (What he does not claim is that the plaintiff supplied documents that had

11

not been previously turned over.)  As a result, he would have the Court exclude *all* of plaintiff's evidence. DE 116.  Plaintiffs' counsel responds that the exhibit numbers changed because she reduced the number of exhibits and attempted to organize them into the order in which they would be introduced.  DE 117.  Nevertheless, Mr. Labuda persists in seeking exclusion of all of plaintiffs' evidence, having filed this motion three times.  DE 116, 138, 140.

Equally important, these applications are precisely the types of matters that should have been resolved professionally between counsel, and not the subject of pointless motion practice.  Hence, the Court's direction for the parties to meet and confer in good faith before refiling such motions is an order that defense counsel clearly failed to follow.  The motions are denied.

### Defendant's Tenth Motion *in Limine*: Request to Strike Supplemental Expert Report

Of the defense motions filed, number 10 is the sole motion that bears consideration. Plaintiffs move to strike this motion as "baseless and redundant," noting

> Defendant already made a motion to preclude Plaintiff's expert and report which was denied.  While Dr. Shapiro subsequently updated his report to reflect the drastic changes that occurred within the mortgage loan industry because of Covid, he explained his methodology and reasoning at his 2nd deposition.

DE 142.

Given the unjustified, methodological sea change underlying the supplemental report, plaintiffs' arguments ring hollow.

As a procedural matter, the supplemental report of plaintiffs' expert runs contrary to the dictates and purposes of Rule 26 and the related disclosure requirements.  The Court took extraordinary care to mitigate any potential prejudice and permit defendant an opportunity to present a complete evidentiary picture at trial, permitting, for example, the opportunity for post-discovery deposition of plaintiffs' expert and the submission of supplemental reports by defendant's expert.  Had the supplemental report been limited, as described by plaintiffs' counsel,

12

to an "opportunity to revisit his report since it has been about 2.5 years since [Shapiro] completed it," these efforts might have proven sufficient. *Compare Faulkner v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 379 (S.D.N.Y. 2014) (finding "introduction of additional expert testimony, after the close of expert discovery would unduly prejudice Defendants who have not been awarded the opportunity to prepare a rebuttal report or depose Ms. Crain regarding her opinions").

But Shapiro's supplement proved far more than simply a recalculation of projections considering additional information. Rather, the supplemental report devises an entirely different methodology, the need for which has not been adequately explained. Such a change in methodology warrants striking the supplemental report. *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 157 (S.D.N.Y. 2003) (striking on procedural grounds a supplemental report that unjustifiably utilized "a new alternative analysis"). And the timing of this supplement was a volitional choice by plaintiffs' counsel and/or their expert, another impermissible factor. *Coene v. 3M Co.*, 303 F.R.D. 32, 42 (W.D.N.Y. 2014) ("The rule does not, however, permit a party to supplement an expert report at any time it wishes, but instead imposes an obligation to supplement the report when a party discovers the information that it has disclosed is incomplete or incorrect") (internal quotations and citation omitted).

The Court is, of course, mindful that "preclusion of an expert report can be a harsh sanction." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 263 F. Supp. 3d 446, 452 (S.D.N.Y. 2017). Yet, the submission of a supplemental report that fundamentally changes the approach taken by the expert (and unaccountably results in a damages projection twice that of the initial report even though plaintiff earned substantially more in mitigation wages) long after the close of discovery warrants exclusion of that report.

The exclusion of the supplemental report on procedural grounds is further buttressed by an analysis under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, (1993). As the Second Circuit has held:

> The flexible *Daubert* inquiry gives the district court the discretion needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact. To warrant admissibility, however, it is critical that an expert's analysis be reliable at every step.

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). Following *Daubert*, Congress amended Rule 702 to require that courts permit expert testimony only "if (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Here, Shapiro's substitution of the "originated residential mortgages" rate as the sole projection metric in place of Census Bureau salary data runs afoul of the second two elements of this Rule. In the portions of the deposition supplied, Shapiro fails to offer any reasoned explanation for the change[7] and acknowledges that he had never "used that particular metrics [sic] to project compensation in any case other than this case," Tr. at 14, DE 145-3, undermining the notion that his newfound approach represents "reliable principles and methods." Fed. R. Evid. 702(c). Furthermore, the unjustified methodological turnabout, along with the wildly disparate results, demonstrates that Shapiro has failed to "reliably appl[y] the principles and methods to the facts of

---

[7] Given the history of this matter detailed above, a reasoned inference could be drawn that Shapiro reworked his opinion only because of a dissatisfaction with the damages amount under the original formulae. In other words, his new methodology appears responsive not to the ring of truth, but that of a cash register.

the case." Fed. R. Evid. 702(d). As such, I find the matters contained in the supplemental report[8] excludable under Fed. R. Evid. 702.

### Consideration of *Sua Sponte* Sanctions Pursuant to 28 U.S.C. §1927

As Judge Spatt noted:

> 28 U.S.C. § 1927 authorizes the courts to sanction an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.. . . [T]o impose sanctions under § 1927, the court must make a finding of "conduct constituting or akin to bad faith." *In re 60 E. 80th St. Equities, Inc.,* 218 F.3d 109, 115 (2d Cir.2000) (citation and internal quotation marks omitted). *See U.S. v. Int'l Bhd. of Teamsters,* 948 F.2d 1338, 1345 (2d Cir.1991) ("Bad faith is the touchstone of an award under this statute."); *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71, 79 (2d Cir.2000) ("[A]n award under § 1927 is proper when the attorney's actions are *so completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose such as delay."). "Unlike Rule 11 sanctions which focus on particular papers, the inquiry under § 1927 is on a course of conduct." *Bowler v. U.S. Immigration & Naturalization Serv.,* 901 F.Supp. 597, 605 (S.D.N.Y.1995).

*Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 367 (E.D.N.Y. 2013).

Plaintiff's counsel had not moved for the imposition of such sanctions, however, such sanction may be imposed *sua sponte*, provided notice and an opportunity to be heard is provided to counsel. *Gallop v. Cheney*, 642 F.3d 364, 370 (2d Cir. 2011) ("we may, with adequate notice and opportunity to be heard, impose sanctions *nostra sponte*"). For avoidance of doubt, this ruling constitutes such notice to Mr. Labuda, who is directed to show cause in writing, if any he has, why such sanctions should not be imposed. Such submission will be filed on or before July 15, 2022.

---

[8] Indeed, Shapiro's unexplained yet convenient methodological pivot, the plain unreliability of the methods adopted in his supplemental report, as well as the startling, if explicable, delta between his projections and actual earnings. raises a fair question as to whether the entirety of his testimony might be stricken as unreliable. *Hunt v. CNH Am. LLC*, 511 F. App'x 43, 46 (2d Cir. 2013) (upholding district court's exercise of discretion in striking supplemental report and rejecting balance of expert testimony "pursuant to Federal Rules of Evidence 702 and 403"). However, given that plaintiffs would suffer irremediable prejudice from such a sanction, the harshness of this remedy, and the likelihood that such matters are "properly explored on cross-examination," the Court will permit expert testimony from Shapiro based upon his initial report. *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995).

15

Plaintiffs' counsel may, if she chooses, file a declaration on or before that date, detailing the amount of attorneys' fees and other costs resulting from the subject conduct.

To be clear, under consideration is Mr. Labuda's repeated filing of motions *in limine* nos. 1-9, as discussed herein, notwithstanding the Court's warning that the filing of baseless motions would likely result in sanctions. Relatedly, his failure to meet and confer in good faith, as directed by the Court, in an effort to reduce the issues and eliminate unneeded motion practice forms another basis for the imposition of potential sanctions.

It is conceivable that Mr. Labuda's prior conduct in this and other cases may be relevant in determining the propriety, nature and extent of any potential sanction. *Usherson v. Bandshell Artist Mgmt.*, No. 19-CV-6368 (JMF), 2020 WL 3483661, at *18 (S.D.N.Y. June 26, 2020), *aff'd in part sub nom. Liebowitz v. Bandshell Artist Mgmt.,* 858 F. App'x 457 (2d Cir. 2021), and *af"d sub nom. Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267 (2d Cir. 2021) (district court should consider "whether there is a pattern of misbehavior rather than an isolated instance"); *Piccolo et al. v. Top Shelf Provisions Co. Inc.*, 16-CV-6930 (GRB), DE 96 (letter from Mr. Labuda noting "Courts must consider prior conduct of counsel in issuing sanctions"). The *Piccolo* case, litigated before the undersigned, was a matter characterized by "repeated instances of unprofessional conduct by both counsel" who "handled th[e] matter in a needlessly contentious fashion." *Piccolo v. Top Shelf Prods., Inc.*, 2018 WL 4374914, at *4 (E.D.N.Y. 2018); *Piccolo v. Top Shelf Prods., Inc.*, 541 F. Supp. 3d 256, 260 (E.D.N.Y. 2021). One of the many problems in that case occurred at a deposition, at which Mr. Labuda "repeatedly directed his client not to answer questions without the assertion of a privilege." 2018 WL 4374914 at *3. In an effort to abate such conduct, "the Court entered orders on no less than eight occasions . . . reminding counsel of their obligations of professional courtesy and cooperation," which were wholly ignored by counsel. 541 F. Supp. 3d

16

at 259. Mr. Labuda has engaged in similar, unprofessional conduct in at least one other case before other judges of this Court. *See, e.g.*, *Maldonado v. Srour*, 2015 WL 5098617, at *1 (E.D.N.Y. 2015) (imposing fees and costs where Mr. Labuda improperly instructed his client not to answer deposition questions, a judge ordered him to cease such conduct and "Mr. Labuda refused to adhere to that order").

Yet one need not look beyond the parameters of this case for other instances of unprofessional conduct by Mr. Labuda. In this action, he filed a woefully undocumented request to have six principal defense witnesses testify by video at trial, including Darius Mirshahzadeh (defendant's CEO), representing to the Court that requiring their testimony in person would "put their lives at risk" due to the increased chances of contracting COVID in connection with travel. DE 134. Though Mr. Labuda claimed that his firm had spoken to each such witness, and went on, at some length, about Mr. Mirshahzadeh's health profile, the application contained no declarations and relied on these representations of counsel. Mr. Labuda represented that the witnesses, including Mirshahzadeh were "very reluctant and hesitant to broad a plane through crowded and congested airports for a round-trip flight to/from New York at this time." DE 134 at 2. In response, plaintiffs' counsel supplied photos and social media postings by Mirshahzadeh demonstrating that he was then vacationing in Mexico for a month. DE 136. Of course, if COVID risks truly presented the issues Mr. Labuda asserted, Mexico would not have been an appropriate destination in June 2022.[9] Thus, the application for Mirshahzadeh to testify via video was, at best, insufficiently researched and, at worst, an effort to mislead the Court.

---

[9] Oshin, O., "Mexico returns to CDC's highest-level COVID warning," *thehill.com*, June 13, 2022.

**CONCLUSION**

Based on the foregoing:

1. Defendant's motions *in limine* Nos. 1-9 are DENIED as baseless and frivolous;

2. Defendant's motion *in limine* No. 10 seeking to strike the supplemental report of plaintiffs' expert is GRANTED; while plaintiffs' cross-motion to strike said motion is DENIED;

3. Defendant's counsel will show cause by July 15 as to why sanctions should not be imposed, and

4. Nothing in this decision will serve to impede the commencement of jury selection and trial, as previously scheduled.

**SO ORDERED.**

Dated: Central Islip, New York
       July 12, 2022

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge